# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GEORGE CANNING,

            Plaintiff,

    v.

U.S. DEPARTMENT OF JUSTICE,

            Defendant.

Civil Action No. 01-2215(GK)

## MEMORANDUM OPINION

Pro Se Plaintiff George Canning ("Plaintiff"), brings this action against Defendant, Federal Bureau of Investigation ("FBI" or "Defendant"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This matter is now before the Court on Defendant's Motion for Summary Judgment on Behalf of the Federal Bureau of Investigation Documents ("Def.'s Mot.") [Dkt. No. 52] and Plaintiff's Cross-Motion for Partial Summary Judgment and Supplemental Vaughn Indices ("Pl.'s Mot.") [Dkt. No. 69].

Upon consideration of the Motions, Oppositions, Replies, the entire record herein, and for the reasons discussed below, Defendant's Motion for Summary Judgment is **granted in part** and **denied in part** and Plaintiff's Cross-Motion is **granted in part** and **denied in part**.

-1-

## I. BACKGROUND[1]

### A. FOIA Requests

On October 12, 1995, Mr. Canning submitted separate FOIA requests to the FBI Headquarters ("FBI HQ"), the FBI's Boston Field Office, Philadelphia Field Office, and Washington Metropolitan Field Office. Mr. Canning's requests related to the FBI's investigation and prosecution of the conspiracy to kidnap Lewis duPont Smith and the investigation of Eastern States Distributors Inc. of Upper Darby, ("ESDI") Pennsylvania, during the time frame 1991 through 1992.

In his requests, Mr. Canning seeks: (i) all records concerning the FBI's investigation of ESDI from 1991 to 1992; (ii) all records concerning court-ordered Title III wiretaps of telephones used during the ESDI investigation; (iii) all records concerning the involvement of individuals, agencies, or organizations other than the FBI and the U.S. Attorney's Office for the Eastern District of Virginia; and (iv) a complete search of all filing systems and locations, including Electronic Surveillance ("ELSUR") indices.

---

[1] Pursuant to Local Civil Rule 7(h), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Consequently, unless otherwise noted, the Court states only uncontroverted facts taken from the parties' Statements of Material Facts.

Mr. Canning attached a privacy waiver from Lewis duPont Smith to each of his requests.

Upon receipt of Mr. Canning's FOIA requests, the FBI processed and released responsive documents to Mr. Canning. The FBI asserted FOIA Exemptions 2, 3, 6, 7(C) and 7(D) to justify withholding certain documents from production. The FBI also referred three documents to the Executive Office for United States Attorneys ("EOUSA") and two documents to the Criminal Division for review and direct response to Mr. Canning. The Criminal Division and EOUSA informed Mr. Canning that they were withholding, pursuant to recognized FOIA exemptions, certain material from the referred documents, including the names and addresses of third parties of investigative interest, the names of FBI Special Agents, and a 1992 intra-agency memorandum (with subsequent revisions) concerning Title III wiretap intercepts. Per the parties' agreement, the FBI prepared, with Mr. Canning's input, a sample Vaughn Index in lieu of an exhaustive account of the withheld material.

**B. Procedural History**

On October 26, 2001, Mr. Canning brought suit in this Court. See Compl. [Dkt. No. 1]. On January 28, 2005, the FBI filed its pending Motion for Summary Judgment. On May 27, 2005, Mr. Canning

-3-

filed his Cross-Motion for Partial Summary Judgment and for Supplemental Vaughn Indices. Both motions have been fully briefed and are ripe for review. See Dkt. Nos. 52, 68, 69, 79, 81.

On March 20, 2009, Mr. Canning filed a Motion for an Order Directing the FBI to Re-Review its FOIA Releases in light of updates to the U.S. Attorney General's guidelines for FOIA disclosures. See Pl.'s Mot. for Order [Dkt No. 88]. The Court granted Mr. Canning's corollary request to stay the case pending the completion of the FBI's re-review. Id. On December 14, 2009, the FBI notified the Court that it had completed its re-review of over 5,000 responsive pages and released additional material to Mr. Canning. See Def.'s Status Report [Dkt No. 94].

## II.  STANDARD OF REVIEW

FOIA cases are typically and appropriately decided on motions for summary judgment. Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys., 762 F. Supp. 2d 123, 130 (D.D.C. 2011); Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "The standard governing a grant of summary judgment in favor of an agency's claim that it has fully discharged its disclosure obligations under FOIA is well-established.... [T]he agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed

-4-

in the light most favorable to the requester." Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983); see also Fed. R. Civ. P. 56(c).

The court may award summary judgment solely on the basis of "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

If the agency withholds any material on the basis of statutory exemptions, the agency's affidavits must also (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail;" (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and must not be (3) "controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. C.I.A., 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III. ANALYSIS

Mr. Canning does not challenge the sufficiency of the FBI's search for responsive records. Instead, Mr. Canning contends: (1) that the FBI has improperly withheld and redacted documents under various FOIA exemptions; (2) the FBI has failed to segregate and release all non-exempt information responsive to his FOIA requests; and (3) the Court should order the FBI to prepare supplemental Vaughn Indices. The Court will consider each of Mr. Canning's arguments in turn.

#### A. Contested Exemptions[2]

##### 1.    Exemption 3

FOIA Exemption 3 precludes release of information that has been:

> specifically exempted from disclosure by [another] statute [that] ... (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

---

[2] The FBI has asserted FOIA Exemption 2 to withhold certain material, an assertion that Mr. Canning has not challenged. The FBI is thus entitled to summary judgment on its uncontested exemption claims. With no material facts in dispute as to material withheld under uncontested exemptions, the Court finds that the FBI has met its burden and released all segregable information. See Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001). Nor has Mr. Canning pointed to any legal authority to the contrary.

In determining whether Exemption 3 properly applies, the Court conducts a two-part test that considers: whether "[1] the statute in question [is] a statute of exemption as contemplated by ·exemption 3 ... [and whether] [2] the withheld material satisf[ies] the criteria of the exemption statute." Fitzgibbon v. C.I.A., 911 F.2d 755, 761 (D.C. Cir. 1990) (citing C.I.A. v. Sims, 471 U.S. 159, 167 (1985)).

The FBI has withheld documents under Exemption 3 based on Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20 ("Title III") and Rule 6(e) of the Federal Rules of Criminal Procedure. Def.'s Mot. at 23. The Title III material relates to the FBI's interception of certain communications and consists of "the number assigned to the interception, the targeted individuals and/or locations, and information derived from the Title III intercepts, which was further utilized in the [FBI's] investigation." Id. The material withheld under Rule 6(e) includes: (i) a Federal Grand Jury subpoena; (ii) the company name and employee served with a Federal Grand Jury subpoena; (iii) the name and identifying information of a private citizen subpoenaed to testify before a Federal Grand Jury; (iv) telephone records and information that identifies specific records subpoenaed by the Federal Grand Jury; (v) and the

dates, company name and employee served with any Federal Grand Jury subpoena. Id. Mr. Canning concedes that Rule 6(e) and Title III constitute statutes of exemption for the purposes of Exemption 3 but argues that the FBI has applied them in an overly-broad manner in order to withhold material in this case. Pl.'s Mot. at 20.

Turning first to the Title III material, Mr. Canning contends that Title III bars the disclosure of only the *content* of intercepted conversations, not other information such as the number assigned to the interception, the identities of targeted individuals, or locations. Id. at 22. Mr. Canning identifies specific instances in the sample Vaughn Index where the FBI withheld the identities of targeted telephone subscribers and administrative information connected to intercepted conversations. Id. at 24. The FBI argues that because Title III mandates that intercepted communication applications must be sealed, the statute protects not only the content of the communication, but also the paperwork applying for and granting the authority which generally includes the identities of the targets involved. Def.'s Opp. [Dkt. No. 79] at 13.

Mr. Canning's argument is not convincing. Without directing the Court to any legal authority supporting his interpretation of

Title III — an interpretation that would mandate the disclosure of identifying information intimately connected to intercepted communications —Mr. Canning would have the Court make the leap that such information should be released.

The Court is unwilling to take such a step in light of other cases to the contrary. See, e.g., Roberts v. F.B.I., 845 F. Supp. 2d 96, 101 (D.D.C. 2012) (concluding that Title III exempted from disclosure the identities of targeted individuals, targeted locations of microphones, and the identities of participants in intercepted conversations); House v. U.S. Dep't of Justice, 197 F. Supp. 3d 192, 206 (D.D.C. 2016) (recognizing that "this Court has extended [Exemption 3's protections] to the application for a wiretap and all supporting materials submitted to the court to obtain a Title III wiretap.").

Indeed, requiring the government to release the identities, time and locations of targets might shed light on the content of the underlying communication, thereby defeating the very purpose of Title III's exemption provision. The Court concludes that the FBI has appropriately asserted Exemption 3 over the Title III material.

Nonetheless, the Court finds persuasive Mr. Canning's argument that even if Exemption 3 shields the Title III material,

the FBI must disclose some of the withheld information because the government has already officially acknowledged it. Pl.'s Mot. at 25. Mr. Canning directs the Court's attention to a July 9, 1992 letter from Assistant Attorney General Robert Mueller that was previously released by the Office of Information Policy ("OIP") in response to a FOIA request. Fourth Canning Decl. [Dkt. No. 69-1], Ex. A. The letter explicitly authorizes the interception of the communications of Donald L. Moore, Jr. and Edgar N. Smith with regard to the 1992 case concerning the conspiracy to kidnap Lewis duPont Smith. Id. In its Opposition, the FBI offers no response to Mr. Canning's argument.

The Court of Appeals has concluded that "the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting Afshar, 702 F.2d at 1130-34 and Fitzgibbon, 911 F.2d at 765-66). An official acknowledgment must meet three criteria: (1) the information requested "must be as specific as the information previously released;" (2) the information "must match the information previously disclosed;" and (3) the information "must already have been made public through an official and documented disclosure." Id. To the extent Mr. Canning

-10-

seeks the disclosure of the identities of Donald Moore and Edgar Smith in the withheld material, Mr. Canning has met these factors. The letter written by Assistant Attorney General Mueller, and disclosed by OIP, unambiguously indicates that Moore and Smith were the subjects of the wiretaps. See Fourth Canning Decl., Ex. A. Mr. Canning is therefore entitled to all instances in which the FBI has withheld the names of Smith and Moore in the context of Title III intercepted communications relating to the kidnapping conspiracy case.[3]

Turning next to the material that the FBI has withheld under Rule 6(e) of the Federal Rules of Criminal Procedure, Mr. Canning, again, does not dispute that Rule 6(e) falls under the ambit of Exemption 3. Pl.'s Mot. at 20. Instead, he argues that there is "little of the grand jury's investigation [into the Smith kidnapping plot] which is still secret" and therefore he is entitled to the withheld information which, Mr. Canning assumes, was previously disclosed in the government's Jencks disclosures in that case. Id. at 26-27. The FBI, Mr. Canning contends, "has not shown that the material it has withheld...has not been disclosed

---

[3] By the same token, to the extent that the FBI is withholding portions of the July 9, 1992 letter from Robert Mueller that were publically disclosed by OIP, the FBI must release the same portions to Mr. Canning. Because the letter discloses the address of Donald Moore, Mr. Canning is also entitled to this information in the material the FBI has withheld.

to the public[.]" Id. at 27. Mr. Canning, however, has it backwards. To prevail on a public domain argument, the plaintiff, not the government, bears the burden of production to point to specific information in the public domain that appears to duplicate that being withheld. Davis, 968 F.2d at 1279. Because Mr. Canning has not carried that burden, his request for the Rule 6(e) material must be denied.

### 2. Exemption 7(C)

FOIA Exemption 7(C) protects information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether Exemption 7(C) applies, the Court must balance the public interest in disclosure with the privacy interests implicated by the release of the material. Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Suspects, witnesses, investigators, and third parties all have substantial privacy interests that are implicated by the public release of law enforcement investigative materials. Id.; Davis, 968 F.2d at 1281. Courts recognize that the disclosure of such material may lead to embarrassment and physical or reputational harm to these individuals. See SafeCard, 926 F.2d at 1205.

It "is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." Davis, 968 F.2d at 1282 (internal quotations omitted). Whether disclosure of private information is warranted under Exemption 7(C) turns on whether the information "sheds light on an agency's performance of its statutory duties." U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).

The FBI has asserted Exemption 7(C) to withhold the names and/or identifying information of: (i) FBI personnel; (ii) local law enforcement officers; (iii) third parties of investigative interest to the FBI or local law enforcement agencies; (iv) third parties mentioned in investigatory records (v) sources who provided information under an express assurance of confidentiality; (vi) third parties interviewed by the FBI; (vii) commercial institutions and employees; and (viii) an attorney representing a third party. Gehle Decl. [Dkt. No. 52-3] ¶ 57.

Mr. Canning maintains that the FBI has officially acknowledged, and therefore must disclose, some of this withheld information, including the subjects of the Smith kidnapping investigation, the subscribers to wiretapped telephones, and the individuals accused in the indictments. Pl.'s Mot. at 29-32. In

support of his position, Mr. Canning has identified a number of public government documents explicitly indicating that the subjects of the Smith kidnapping case included Donald L. Moore, Jr., Galen G. Kelly, Edgar Newbold Smith, and Robert Point. In addition to the aforementioned July 9, 1992 letter from Assistant Attorney General Robert Mueller, Mr. Canning has identified: (1) the Criminal Complaint charging these individuals with conspiracy to kidnap Lewis duPont Smith; (2) an FBI News Release announcing the arrests of these individuals; (3) the corresponding indictment in the Eastern District of Virgina; and (4) a 1992 memorandum released by EOUSA in a FOIA disclosure naming Kelly, Moore and Smith as subjects of the investigation. See Fourth Canning Decl., Exs. C-F.

These documents, some of which were disclosed by the government in previous FOIA releases, make it abundantly clear that the roles of Moore, Kelly, Smith, and Point as subjects of the kidnapping investigation exist in the public domain. With these precise examples, Mr. Canning has met his burden to identify specific documents in the public record that duplicate the material being withheld by the FBI.[4] Davis, 968 F.2d at 1279. The Court

---

[4] Relatedly, Mr. Canning has identified a June 12, 1996 document previously released by EOUSA that appears to match the description of a document the government has withheld, serial SubZl-5. See Pl.'s Mot. at 6. If SubZl-5 is

-14-

therefore grants Mr. Canning's Motion for Partial Summary Judgment regarding the withholding of the names of Donald Moore, Jr., Galen Kelly, Edgar Newbold Smith, and Robert Point as subjects of the investigation and subscribers to the telephones that the FBI wiretapped.[5]

### 3. Exemption 7(D)

FOIA Exemption 7(D) allows an agency to exempt records or information compiled for law enforcement purposes where such information "could reasonably be expected to disclose the identity of a confidential source...which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). To invoke this exemption, an agency must show either that the source spoke only under express assurances of confidentiality or that the circumstances support an inference of confidentiality. U.S. Dep't of Justice v. Landano, 508 U.S. 165, 174 (1993).

The FBI has invoked Exemption 7(D) to withhold: (i) the identities of and information received from individuals who provided information to the FBI during the course of the investigation into the plot to abduct Lewis duPont Smith under an

---

identical to the EOUSA document that lies in the public domain, the FBI must also release it to Mr. Canning.

[5] The FBI also generally asserts Exemption 6 in conjunction with its Exemption 7(C) claims. See Steward Decl. [Dkt. No. 79-1] ¶ 17. Because the Court has concluded that certain of this information lies in the public domain, it need not examine whether Exemption 6 applies to those materials.

implied assurance of confidentiality; (ii) information provided by individuals who were interviewed under an express assurance of confidentiality; (iii) source symbol numbers; and (iv) information provided by and/or identifying data concerning source symbol numbers. Def.'s Mot. at 35-37.

Mr. Canning's principal challenge to the FBI's assertion of Exemption 7(D) concerns the withholding of information concerning Douglas Poppa, the government's key witness in the federal kidnapping conspiracy trial. According to Mr. Canning, Poppa's role in the trial and underlying investigation was sufficiently public that he cannot be considered a "confidential" source for the purposes of Exemption 7(D). Mr. Canning further points out that although the FBI initially withheld references to Poppa in its disclosures, following the 2009 re-review of its FOIA releases, the FBI disclosed that Poppa was an FBI source. See Pl.'s Status Report [Dkt. No. 96] at 5-6 (identifying specific pages in which the FBI disclosed that Poppa was "working at the direction of the FBI"). Therefore, Mr. Canning argues, the information concerning Poppa is officially in the public domain and cannot be withheld from disclosure.

The Court agrees with Mr. Canning. In asserting a claim of prior disclosure, plaintiffs bear the burden of production to point

to specific information in the public domain that appears to duplicate that being withheld. Davis, 968 F.2d at 1279. Mr. Canning has clearly met his burden. He has identified specific instances in which the FBI has disclosed to him, in the FOIA context, Poppa's identity and role in the kidnapping investigation. See Pl.'s Status Report at 5-6. Accordingly, the Court grants summary judgment in Mr. Canning's favor as it relates to the FBI's assertion of Exemption 7(D) to withhold information concerning Poppa's role in the kidnapping investigation. To the extent that the FBI continues to withhold Poppa's name and identifying information (including source symbol numbers assigned to Poppa) from Mr. Canning, it shall disclose this material forthwith.

Mr. Canning also challenges the FBI's invocation of Exemption 7(D) to withhold information obtained from sources under an implied assurance of confidentiality. Pl.'s Mot. at 19. Mr. Canning takes issue with the fact that the FBI states that the sources "were interviewed under circumstances from which an assurance of confidentiality may be implied" but does not provide further explanation to support an inference of confidentiality. Id. In response, the FBI argues that the implied assurances of confidentiality can be substantiated by the nature of the crime, in this case a high-profile kidnapping. Def.'s Opp. at 10.

The Court is not persuaded by the FBI's reasoning. In <u>Landano</u>, the Supreme Court concluded that the government is not entitled to a presumption that all sources supplying information in the course of a criminal investigation are confidential sources within the definition of Exemption 7(D). 508 U.S. at 181. Although an implied grant of confidentiality may at times be inferred from the nature of a criminal investigation, see <u>id.</u>, the FBI has, in this case, done nothing more than assert that the Court should infer confidentiality just because the underlying case concerned a kidnapping conspiracy.

The FBI has not provided any explanation as to the connection between the sources and the criminal activity. "Nor is there any description of the circumstances which purportedly gave rise to the implication that the source(s) provided information to the FBI only with the understanding that their identities and the information they provided would not be released to the public." <u>Gamboa v. Exec. Office for U.S. Attorneys</u>, 65 F. Supp. 3d 157, 170 (D.D.C. 2014) (concluding that the FBI improperly withheld information under Exemption 7(D) under an implied assurance of confidentiality).

As Mr. Canning highlights, the government has the obligation to "point to more narrowly defined circumstances that ... support

the inference" of confidentiality. Landano, 508 U.S. at 172. Because the FBI has not done so, the Court concludes that an assurance of confidentiality between the FBI and its informants in the kidnapping case cannot be implied. Accordingly, the Court grants summary judgment in Mr. Canning's favor as far as it relates to the documents the FBI has withheld under Exemption 7(D) containing the identities of individuals who provided information to the FBI under a purported implied assurance of confidentiality during the course of the kidnapping investigation.

## B. Segregability

Mr. Canning contends that the FBI has failed to segregate and release all non-exempt information responsive to his FOIA requests. Pl.'s Mot. at 32. FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Elliott v. U.S. Dep't of Agric., 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)). To demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" for its non-

-19-

segregability. Mead Data, 566 F.2d at 261. "However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed." Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).

Mr. Canning focuses his segregability argument on the information that the FBI has withheld under Exemption 7(C). Specifically, he argues that the FBI's blanket assertion that it has reviewed all pages to ensure all the segregable non-exempt information was released is inadequate to meet its burden of proof.

Concerning the material the FBI has withheld under Exemption 7(C) that the Court has not already ordered disclosed, see supra, the Court finds that the FBI has met its obligation to release all segregable information.

As discussed above, an agency is not required to provide so much detail that the exempt material is in effect disclosed. The Court of Appeals held in Johnson that a comprehensive Vaughn index, along with an affidavit that a line-by-line segregability review of each document withheld in full, was sufficient to fulfill the agency's obligation to show that further segregability was not feasible. See Johnson, 310 F.3d at 776. Like the agency in Johnson, the FBI has provided a detailed Vaughn index and an affidavit asserting that each responsive document was reviewed for

-20-

segregability. See Gehle Decl. ¶ 54. During the FBI's re-review of its FOIA releases, it re-considered each redaction and withholding to determine whether information previously withheld could be released. Id. Where the factual justification for claiming an exemption appeared discretionary or marginal, the FBI erred on the side of disclosure. Id.

Accordingly, the Court finds that the FBI has adequately demonstrated that it has released all segregable material and denies Mr. Canning's Motion for Summary Judgment on this issue.[6]

### C. Supplemental Vaughn Indices

Pursuant to the Parties' agreement, the FBI prepared a sample Vaughn Index in lieu of an exhaustive account of the withheld material. Although Mr. Canning played a role in selecting the documents to be included in the sample Index, he now contends that the FBI should prepare supplemental Vaughn Indices. First, Mr. Canning argues that the FBI should account for a document, WMFO serial SubL-14, that it released to Mr. Canning after the

---

[6] Mr. Canning also points to a gap in the disclosed serials to suggest that the FBI may be withholding additional material without justification. Pl.'s Mot. at 41. In its supporting declaration, the FBI attributes the gap to an inadvertent skip in the serialization process. See Gehle Decl. ¶40-42. The Court accords the FBI's declaration a presumption of good faith. See SafeCard, 926 F.2d at 1200 (recognizing that agency affidavits are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents) (internal quotation marks omitted).

preparation of the initial sample Vaughn Index. Because he did not have the opportunity to consider whether to include this document in the sample Index, Mr. Canning insists it should be incorporated into a supplemental Vaughn Index. Pl.'s Mot. at 42. Second, Mr. Canning maintains that the FBI's sample Vaughn Index is vague and confusing. Id. at 43.

The Court finds both of Mr. Canning's arguments unpersuasive. There is no set formula for a Vaughn Index or declarations, but they must "provide[ ] a relatively detailed justification [for any nondisclosure], specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 146 (D.C. Cir. 2006) (quoting Mead Data, 566 F.2d at 251). Regarding Mr. Canning's first argument, Mr. Canning overlooks the function of the sample Vaughn Index. A sample Index does not purport to contain every document the government chooses to withhold. Rather, as the FBI has underscored, the purpose is to allow the Court to extrapolate its conclusions from the representative sample to the larger group of withheld materials. The Vaughn Index in this case adequately fulfills that purpose.

Turning to Mr. Canning's second argument, after Mr. Canning raised his concerns regarding the confusing nature of the sample Vaughn Index, the FBI re-reviewed the documents at issue and "remarked them in an effort to make it easier for Plaintiff to read and understand the exemptions claimed." Def.'s Opp. at 18. The FBI also provided Mr. Canning with additional information regarding the withheld material. See Steward Decl. ¶ 41. In his Reply Motion, Mr. Canning does not suggest that the FBI's remedial steps were insufficient to address his concerns. See generally Pl.'s Reply [Dkt. No. 81]. Accordingly, the Court will consider the issue resolved and deny Mr. Canning's Motion for Supplemental Vaughn Indices.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment shall be **granted in part** and **denied in part** and Plaintiff's Cross-Motion for Partial Summary Judgment and Supplemental Vaughn Indices shall be **granted in part** and **denied in part**.

Further, Plaintiff's Motion for an Order Directing the FBI to Re-Review its FOIA Releases for Discretionary Release of Information [Dkt. No. 88] shall be denied as moot in light of the

fact that the FBI conducted the re-review that Mr. Canning requested.

An Order shall accompany this Memorandum Opinion.

July 13, 2017

*G ludlys Kessler*

Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF

and to:
George Canning
60 Sycolin Road
Leesburg, VA 20175